We'll now move to Appeal 25-1646, United States v. Summit, and we're going to begin with oral argument from Mr. Jorgensen. Good morning. May it please the Court. My name is Christian Jorgensen. I represent the appellant in this matter, Summit, Inc. This appeal is taken from a post-judgment order of the United States District Court for the Northern District of Indiana on March 18th of 25. The order found Summit in contempt of court and issued a sanction for failing to pay a monetary judgment more promptly. Despite the fact that the DOJ and Summit had entered into a payment agreement. Summit is requesting that the order of contempt and sanction of March 18th be vacated and the case be remanded for further proceedings and an evidentiary hearing consistent with the specific DAX mandated within the amended default judgment. Now this, the money judgment, which is the focus of this, within the amended default judgment was entered in June of 2022 and resulted from a breach of contract action, as specified by Justice Kohler, filed by the DOJ on behalf of the EPA. The entire judgment is comprised of both a monetary judgment and separate injunctive relief for specific DAX that Summit and its president, Mr. Kalopoulos, had to perform. And while the judgment order states that the judgment amount for damages should be paid to the United States via wire transfer, it still remained a simple money judgment that was owned by the government, as in any plaintiff. As for the contempt citation, the District Court modified the original injunction set forth in the amended judgment and required Summit to abide by all regulatory requirements of a large quantity generator of hazardous waste. The judgment, on the other hand, required Summit to identify as a large quantity generator, and therefore all regulatory requirements, only if appropriate, meaning that Summit was to register as a large quantity generator only after a factual determination had been made by the EPA or by the court if a dispute arose, which did occur and was specifically acknowledged by the District Court in its March 18th order. In its briefing on the contempt issue, Summit presented arguments and exhibits as to why Summit could not be a large quantity generator of hazardous waste and specifically requested an evidentiary hearing to be held on the issue. Yet, no factual finding was ever made by the court regarding this highly disputed issue, and this will not be determined until after the money judgment is paid in full. The District Court provided no reasoning for finding Summit in contempt and sanctioning it, other… Let's jump to Labor's Pension Fund and the outline of that case. Okay. There's two, actually, Your Honor. Labor's Pension Fund, which I had mentioned, central states, differentiates between Rule 69 and Rule 70, which is the heart of this case, right? 69 is for money judgments, 70 is for specific tax. Now, what made central states fall under Rule 70, and Judge Posner actually quotes it as taking it out of Rule 69 and 70 because it's an ERISA case and it was held in a constructive trust. This money judgment wasn't held in a constructive trust for anyone. Now, to piggyback off that, the Chadwood case, which maybe you would ask about as well, Judge Pryor, that was the only one cited by the Department of Justice. But does the Labor's Pension Fund foreclose your argument that the District Court was required to adhere to Rule 69 before holding Summit in contempt? It is, Your Honor. It does say… It clearly states that if a money judgment is taken out of the issue, if it's an equitable issue, if it's an equitable judgment and includes money, that would fall under Rule 70. So we have two buckets. The buckets in the Cheswick case and the buckets in the central states case were both equitable claims, and they were held in trust, and they were held for the benefit of others. This money judgment was held for the benefit of nobody but the USA, and so they're completely distinguishable. And it's a point I've been trying to get across through this entire litigation. Mr. Jorgensen, can I… Please. Can I ask you a legal question? Please. All right. Rule 69A, okay, has that language in it unless the court directs otherwise. You know what I'm talking about? A-1. A-1, okay. I want you to forget about the facts of this case entirely and give me a hypothetical where there can be execution to collect a money judgment where that clause is triggered. Just make up the fact pattern. Well, the fact pattern would be that there wasn't execution that was available, that assets perhaps could not be obtainable through a writ of execution, and the procedures of the state, which must be followed, could not be followed because somehow the defendant itself had either sheltered assets, hid them, or otherwise absconded from the jurisdiction. Okay. That's the first thing. Have we ever held that that phrase is that limited? I think that's a fine hypothetical, but have we ever concluded that it's that limited? Actually, Your Honor, it's just the opposite. I believe that you all, the Seventh Circuit and other circuits, have consistently maintained that that language is only applicable, and there are rare cases, only applicable if, in fact, the state procedural supplemental proceedings statute can't apply. Can or can't apply? Can't. There's a lot more case law that involves stating that contempt can't be applicable to collection of a money judgment than there are the opposite, which is what I believe you're asking me, Your Honor. So no, I'm not aware of any other than those two cases, the Chazwick case and the Central States case, that one coming from Judge Posner, where the differentiation was made between a judgment that was equitable in nature and a judgment that is just a monetary judgment. Okay. Now can I go back to the facts? Sure. Okay. You said early on in your argument that the parties had reached some kind of payment agreement or some kind of payment arrangement. Yes, Your Honor. Okay. When you were last in front, or when you were in front of the district court judge on the contempt order that is being challenged on appeal, my understanding is that your adversary was nonetheless seeking contempt. Your Honor. In other words, it wasn't the district court that said, oh no, I understand you guys have reached a payment arrangement, but I, at my own authority as the district court judge, am calling you in. I've had it. I'm going to hold you in contempt. Your adversary sought contempt, correct? Right. Incorrectly. Incorrectly. Because of the payment settlement? It was there for purposes of a motion for contempt. I'm saying that the motion for contempt was improper. No. I'm sorry. I want to make sure that we're clear. We were, the court was ruling or having a hearing on the motion for contempt. The court did have a, certainly. First of all, which, just slight background here. The original show cause hearing was brought up sua sponte by the district court during the status conference in 2024. It was a simple status conference, and the district court brought it up. Now, that was abandoned by the district court because the Department of Justice said, we'll file our own motion for contempt. And that's how that occurred. Now, there was no, there was no turnover order involved. There was nothing but that money judgment sitting out there. So, once the Department of Justice filed its motion for contempt, I, of course, brought up the fact that Rule 69 had never been followed. We're skipping over a huge step here. Okay. So, on the, in March of, the March of 2025 is when the district court finds your client in contempt. Correct. So, there were hearings in August of 2024, and there was one in October of 2024.  Okay. But when it comes to March of 2025, you're not trying to tell us, I don't think. Tell me, tell me if I'm mistaken, that at that point in time, the Justice Department in March of 2025 was saying, judge, judge, do not hold Summit in contempt. We've worked this out. We have a payment arrangement. No, Your Honor. Actually, that took, took place prior to that hearing. And in the hearing and in the transcript, the Department of Justice actually submitted into evidence the payment agreement. So, was the Justice Department in March of 2025 in court against its wishes? No, Your Honor. It had filed the motion for contempt, piggybacking off of what the district court had sui sponte done earlier. They were in court. Right. We were in court. I announced as soon as I could off the record, and you could see it on page, I believe, three of the transcript. So, okay. So, my question is, what, I don't know, can you just explain to me, what point are you trying to make with respect to the parties had worked this out with a payment agreement? There's no need for the district court to do anything. There wouldn't have been, Your Honor. But yet, the district court still held my client in contempt and sanctioned him. Well, the Justice Department must have thought there was a need to do something, or it would have walked out of the courtroom. Well, it certainly did. And, in fact, what happened is, later, the Department of Justice says, well, wait a minute, the payment agreement that we entered into was conditional. Now, we disagree. And Judge Kolar, explaining at that hearing, which you have, says, well, wait a minute, that's an agreement between the Department of Justice and Summit, and that's nothing more than a contract issue. But even though there's a contract issue out there, now, remembering, of course, the Department of Justice owns this judgment. It's chattel paper. And even though they own that chattel paper and negotiated that agreement with us, the district court still went ahead and found my client in contempt because we didn't pay fast enough and disregarded the fact that there was a settlement payment agreement on that issue. Not just paid fast enough, paid anything. Regardless of whether or not they paid anything or not, I don't see the difference. Because in any run-of-the-mill breach-of-contract action where there's a collection proceeding, it is up to the judgment holder who owns it to assign it. They can sell it. They can compromise it. And they can negotiate it. As we stand here right now, has your client made payments toward the judgment? Absolutely, Your Honor. Not only have they made payments under the agreement that was given to us, that was— Did those payments occur before or after March of 2025? They occurred immediately after because we had agreed that they would begin on April 1st, which, again, is part of the record and was submitted to the district court in evidence by the Department of Justice. Okay. And are we almost paid in full, or are we talking— It's a three-year agreement, Your Honor. What percentage of it has been paid, if you want to estimate? Since April of 2025, every month. The DOJ actually, several days before payment is due, sends a reminder to my client and then accepts the payment. What, like $1,000 a month or $100,000 a month? I mean, it makes—how much? I believe it's $1,000 or— Is it $265,000? $11,000 a month, I believe. $11,000 a month, so it equals out to three years. Okay. All right. Would you like to reserve the remainder of your time for rebuttal? I will, Your Honor. Thank you, Mr. Jorgensen. Thank you very much. Mr. Brabender will move to you now for argument on behalf of the appellee. May it please the Court, my name is Alan Brabender on behalf of the United States. Let me first address this issue regarding the so-called agreement. Yeah, the reason I'm asking is, we have a case for controversy in front of us? Yes, you do, Your Honor. And what is it? The contempt finding and sanction. It's not been mooted by this agreement? No. There is no agreement, Your Honor. Are they paying? They are paying. They're paying $11,000 per month. What are they paying pursuant to, then, if there's not an agreement? Pursuant to the court's order, the court's judgment. So, the court order and the judgment are duplicative, and they're paying pursuant to one and not the other? Is that your position? Well, the court's judgment orders them to pay the United States $350,000, and they're paying towards that judgment. Now, why isn't that paying pursuant to the agreement? There is no agreement, Your Honor. Mr. Jorgensen thinks there is. Is there a piece of paper that you all have signed? I keep saying there's an agreement, but there is no agreement. There was an— There's no payment plan designed by the Department of $11,000 a month? There was an interim agreement that was contingent upon documentation from Summit that that was the most they could pay. Was that signed by both parties? I don't know if it was signed or not, Your Honor. I don't—when you go back to the transcript of the March 2025 hearing, you'll see the AUSA saying, Your Honor, there is no agreement. It's contingent on documentation because we believe Summit should be paying much more than $11,000 per month. We want to see the documentation that all they can pay is $11,000 per month. When that documentation was provided, the U.S. provided that information to its financial analyst, and the financial analyst said they could pay a lump sum. They could pay it now, but they should certainly be paying more than $11,000 per month. So this interim agreement that was contingent on this documentation falls by the wayside. The documentation shows they should be paying much more than what they are. So your position is that the $11,000 that is being paid per month, in fact, has been paid, but it's a voluntary payment. It's not pursuant to any obligation that the United States is a party to. That's correct. Well, you're saying it's pursuant to the obligation of the contempt finding. Well, it's towards a judgment, right? There is a judgment against Summit for $350,000. They're paying towards that judgment. And right now Summit is under a contempt finding. Is that right? Correct. Therefore, the payment would be pursuant to that. If they don't do it, the sanction would go into effect. Well, the sanction is in effect. They have to comply with the large quantity generator regulations until payment is made in full. The judgment of $350,000 is paid in full. In your motion for contempt, you presented that the district court could pursue this proceeding under Section 3008. And as we stand in court this morning, are we still relying on 3008? Well, we're relying on the court's—our contempt motion was based on the court's inherent authority. It wasn't based on Rule 69. It wasn't based on Rule 70. It was based on the court's inherent authority to hold a party in contempt for violating a lawful order. The contempt power, despite what Summit says, is not derived from Rule 70. The contempt power of a court is derived from its inherent authority. You're making this distinction between the federal rules of civil procedure and inherent authority. Is there a place in Judge Kollar's order where you're situating that? No, but our motion was based on—not on Rule 70 or Rule 69. It was based on the court's inherent authority. Judge Kollar never mentions Rule 69 or Rule 70 because his understanding was also that he was exercising his inherent authority of contempt. Is there a portion in his order that you want to point us to for that? Well, that's pointing to a negative, Your Honor. Again, if you look at the order, you will not see mention of Rule 69 or Rule 70. Or the inherent authority. I don't think he also says, I'm exercising inherent authority, but the cases that he would be citing or when you sort of—it's implicit in his understanding. My impression, correct me if I'm wrong, is when I read this, it's hard to read the March 2025 in isolation. It comes against the backdrop of history, and the history was relevant, not irrelevant, to the district judge. And the relevance of the history was that it summits failure to do anything to satisfy the money—the default judgment, which if you even back up further was the product of a settlement arrangement, drove the court to a point of exasperation. Correct. Okay. And there were all kinds of last clear chances—my words, not the district court's—last clear chance, last clear chance. And they did absolutely nothing. And that is what pushed it over the line. That's correct, Your Honor. Is that a fair conclusion? That is a very fair conclusion. Judge Kohler— They didn't even say, well, we'll sit down with the United States and we'll negotiate a payment plan. We're paying $50,000 this afternoon. There's nothing like that. That's correct. Judge Kohler said multiple times that the history of this case is one of the reasons why he felt he had to act. Could he act on a breach of contract theory, though? Is that allowed? Well, the—I don't believe there is a breach of contract. Isn't part of the basis that he's saying is that Summit never complied with the arrangements that it had to? And that strikes me as being breach of contract, but wouldn't that be different than what would normally be the case under Rule 69? Well, 69 tells us we've got to go to Indiana procedure. There's this Cowart case. There's authority out there with regard to what a court can do to help toward the end of collection of a money judgment. And this seems to be different than that. Sure. What Judge Kohler was enforcing was not the prior agreement from 2016 between the EPA and Summit, but the court's judgment. Judge Brady's judgment from June of 2022. And it's true that the sort of typical means of enforcing a monetary judgment is a rate of execution. But Rule 69, the directs otherwise clause, preserves that court's inherent authority to also use contempt. Do you have authority for that, a case that you want to cite for that? Well, Laborers' Pension Fund is one. Cheesemore is another one that we cited in our brief. I guess my concern with Laborers' Pension Fund is that, in that case, it also leaned on Illinois law that permitted contempt. And if you lean on Indiana law, too, here, the result is the same. Because Indiana law, Rule 69 of the Indiana civil procedure, also preserves a court's inherent contempt power. So a rate of execution is not the exclusive means in Indiana for enforcing a monetary judgment, just like in federal court. Why didn't the Justice Department just say, look, we've had it. We're exasperated, too. We're invoking all of the Indiana law authority. And we're going to look to close the company. We're going to look to sell the machine that crushes the cars. All this other stuff. We've had it. Yeah, and the United States offered to file a rate of execution when this became just about the civil penalty. But Judge Kohler didn't seem to think it was necessary because he had inherent authority. And I think it's important to understand that when the United States filed the contempt motion, it was not just about the civil penalty. Some had failed to comply with almost every aspect of the default judgment. It had failed to submit a closure plan. It had failed to label containers. It had failed to submit a contingency plan. It had failed to provide a list of crushers. And it failed to certify its compliance with RCRA in addition to not paying the civil penalty. So it was all these things that some had failed to do and had been failing to do for almost a decade is why the United States filed the motion for civil contempt. Now, it just came down to the fact that Judge Kohler thought, well, there's maybe some disagreement as to whether Summit is trying to comply with these other things. But one thing that was clear to Judge Kohler is that the civil penalty payment, the obligation to pay the civil penalty, was just being totally and completely ignored. I have some concern looking at Indiana law. I know that you cited that Indiana law permits this. And Kohler v. White, the Indiana Supreme Court, held that contempt is unavailable to enforce money judgments. And so can you—and they relied, of course, on Pettit v. Pettit. Can you respond to that? I'm not familiar with that case, Your Honor, but I do know that Rule 69 of the Indiana— Trial Rule 69? Yeah. It's the same as the federal Rule 69, Your Honor. And Rule 69 is not the exclusive means for enforcing a monetary order. That contempt can be used, as this Court has held in the Laborers' Pension Fund and in Chisholm. And unless the Court has any additional questions, we would ask that the contempt finding and sanction be upheld. Thank you, Mr. Brabender. Mr. Jorgensen, we'll go back to you now for rebuttal argument. Thank you, Your Honor. Your Honor, I'm confused. I do not see where we're melding the Court's implicit authority to uphold its own orders in decorum in courtroom and disregarding Rules 69 and 70 of the Rules of Civil Procedure. They exist for a reason, not in a vacuum, and we can't render them superfluous. You're clear on that. Go back, though. I mean, this is the second argument in a row. We don't really have this where the parties come in and we can't even figure out what's happened. As a matter of fact, is there an agreement—not a contempt order. Forget the contempt order. We know there's a contempt order. Is there an agreement that Summit has signed and the United States has signed that embodies a payment plan pursuant to which the $11,000 per month for three months has been paid? There's an agreement, and it's not signed, Your Honor. It was submitted to the Court as evidence by the DOJ. Do you have an exhibit number or a docket entry number? Absolutely. Your Honor, I apologize. So when you say you're paying pursuant to an agreement, you're paying pursuant to a non-executed agreement or something. Which, Your Honor, is irrelevant. No, no, it's not irrelevant. Oh, no, no, I just meant to be signed to be valid. This is a contract, as Justice Kohler indicated on the record. We're not getting—I just need a yes or no. Is there an executed agreement? No, there's not a signed agreement. You were going to give us a docket entry or a number with regard to the unsigned piece of paper. Yes, Your Honor. That is 95, Your Honor, and a proposed payment schedule for the judgment in the United States v. Summit, admitted without objection. All right. So, look, you've got one minute left. We don't want to be here all day. I've got a question for you. What did you mean when you said earlier that we're paying pursuant to an agreement? What agreement do you have in mind? When there's an offer and acceptance, whether we have a bilateral contract or a unilateral contract, either way we win. And if the Department of Justice decides they don't want to accept payments anymore, I'll file a motion to enforce it. Because just as Justice Kohler said, this is an agreement, a contract, between the Department of Justice, who owns the judgment, again, which obviously— You're talking about docket or record 95 or whatever? Yes, that's—I mean, that's where it was entered into evidence and that we've been paying on, Your Honor, is that schedule. And thus far, there's been payments in April through— This month. Well, actually, it's not due in November for another week. So every single payment. And reminders from the Department of Justice to pay. So roughly seven to eight payments. Correct, Your Honor. And you've committed to making them every month, not skipping months or anything like that, making them every month until it totals the amount of the money in judgment? Plus full interest, Your Honor. I mean, have you guys tried to get into a room and figure out whether you can resolve this? We did with the payment arrangement, Your Honor. It was the district court who disregarded the payment arrangement and went ahead and held my client in contempt and sanctioned him without a hearing. That's my problem. Now, the Department of Justice is just writing off the district court's coattails on this one, to put it— Colloquially.  Thank you, Judge. Thank you, Mr. Jorgensen. Thank you, Mr. Brabander. The case will be taken under advisement. Thank you very much.